**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| EVOQUA WATER TECHNOLOGIES, LLC, <br><br>          Plaintiff, <br><br>    v. <br><br> M.W. WATERMARK, LLC, and MICHAEL GETHIN, individually, <br><br>        Defendants. | No. 1:16-cv-00014−RJJ−RSK <br><br><br> Hon. Robert J. Jonker <br> Magistrate Judge Ray Kent |

**EVOQUA'S MOTION TO REINSTATE THE COURT'S ORDER FINDING
DEFENDANTS IN CONTEMPT**

34592034.2

### TABLE OF CONTENTS

Table of Contents ................................................................................................................ ii

I.      Background ............................................................................................................... 2

        A.      Watermark is Found in Contempt of the Permanent Injunction ............................. 2

        B.      The Court Vacates the Contempt Opinion ........................................................... 4

        C.      The Sixth Circuit Reverses, Finding Consent Decrees in Michigan
                Are Freely Assignable Absent Express Language to the Contrary ....................... 5

II.     Legal Standards ....................................................................................................... 5

III.    The Court Should Reinstate the Contempt Finding ........................................... 5

        A.      The Contempt Order Should Be Reinstated .......................................................... 5

        B.      Evidence of Record Establishes that Evoqua Has Obtained the
                Rights Covered by the Permanent Injunction and the Right to
                Enforce the Permanent Injunction ..................................................................... 10

        C.      Evoqua's Motion Is Timely Because It Has Been Made Within A
                Reasonable Time ................................................................................................ 15

IV.     Evoqua Should Be Granted Leave to Supplement Its Request for
        Attorneys' Fees in View of Subsequent Litigation Concerning
        Watermark's Contempt ....................................................................................... 17

V.      Conclusion .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero-Motive Co. v. Great Am. Ins.*,
  302 F. Supp. 2d 738 (W.D. Mich. 2003) .............................................................................7

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*,
  249 F.3d 564 (6th Cir. 2001) ...............................................................................................11

*Bowles v. Oakman*,
  246 Mich. 674, 225 N.W. 613 (1929) ................................................................................14

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ..............................................................................................................7

*Clarke v. Burkle*,
  570 F.2d 824 (8th Cir. 1978) ...............................................................................................15

*Coal Resources, Inc. v. Gulf & Western Ind.*,
  865 F.2d 761 (6th Cir. 1989) ............................................................................................6, 7

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) ........................................................................................................12, 13

*DAGS II, LLC v. Huntington Nat. Bank*,
  616 F. App'x 830 (6th Cir. 2015) ........................................................................................13

*In re Emergency Beacon Corp.*,
  666 F.2d 754 (2d Cir. 1981) ................................................................................................15

*Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*,
  No. 13-14241, 2015 WL 5216579 (E.D. Mich. Sept. 4, 2015) ............................................7

*Evoqua Water Techs., LLC v. M.W. Watermark, LLC*,
  No. 18-2397/2398 (Nov. 21, 2019) .......................................................................................5

*Hanover Ins. Co. v. American Engineering Co.*,
  105 F.3d 306 (6th Cir. 1997) .................................................................................................6

*Jawad A. Shah, M.D., PC v. State Farm Mut. Auto. Ins. Co.*,
  920 N.W.2d 148 (Mich. Ct. App. 2018)................................................................................5

*JGR, Inc. v. Thomasville Furniture Indus., Inc.*,
  550 F.3d 529 (6th Cir. 2008) .................................................................................................8

iii

*In re Kenneth Allen Knight Trust*,
    303 F.3d 671 (6th Cir. 2002) ............................................................8

*Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings,
    LLC*,
    399 F. App'x 97 (6th Cir. 2010) ......................................................13

*M.W. Watermark, LLC. v. Evoqua Water Techs. LLC*,
    2020 WL 2515510 (May 18, 2020).................................................5, 15

*Menier v. United States*,
    405 F.2d 245 (5th Cir. 1968) ..........................................................15

*In re Pacific Far East Lines*,
    889 F.2d 242 (9th Cir. 1989) ..........................................................15

*Pashak v. Interstate Highway Const., Inc.*,
    No. 189886, 1998 WL 2001203 (Mich. Ct. App. Mar. 20, 1998) ........................14

*Scott v. Metro. Health Corp.*,
    No. 1:02-CV-485, 2008 WL 11291132 (W.D. Mich. July 16, 2008) ..............17, 18

*Smith v. Sec'y of Health & Human Servs.*,
    776 F.2d 1330 (6th Cir. 1985) ........................................................15

*Stoll v. Gottlieb*,
    305 U.S. 165 (1938) .....................................................................8

*Thatcher v. Kohl's Dep't Stores Inc.*,
    397 F.3d 1370 (Fed. Cir. 2005).........................................................4

*Petition of U.S. Steel Corp.*,
    479 F.2d 489 (6th Cir. 1973) .........................................................6, 9

*Waste Mgmt. of Ohio, Inc. v. City of Dayton*,
    169 Fed. Appx. 976 (6th Cir. 2006) ....................................................9

*White v. Murtha*,
    377 F.2d 428 (5th Cir. 1968) ..........................................................8

**Other Authorities**

Fed. R. Civ. P. 60(b)(5).....................................................................5

Fed R. Civ. P. 60(c)(1) ......................................................................5

*Restatement (Second) of Contracts* § 33 (1981) ..........................................14

Plaintiff Evoqua Water Technologies LLC ("Evoqua") respectfully moves to reinstate the finding of contempt against defendants M.W. Watermark, LLC ("Watermark") and Michael Gethin, that was entered in this case on September 12, 2016 by the Honorable Robert Holmes Bell, *Contempt Opinion* (ECF No. 47), and subsequently vacated. *Vacating Opinion* (ECF No. 154); *Vacating Order* (ECF No. 155). The Contempt Opinion should be reinstated to put Evoqua back in the same position it was in prior to the Vacating Order. The Contempt Opinion should be the law of the case, and the Sixth Circuit's decision justifies a reinstatement of the Contempt Opinion while further litigation is pursued. *6th Cir. Opinion* (ECF No. 286).

Evoqua's Motion requesting a finding of contempt against Watermark was fully and fairly litigated more than three years ago. *See Motion for Sanctions* (ECF No. 19). Evoqua's motion provided clear and convincing evidence that Watermark and Mr. Gethin had violated both substantive provisions of the 2003 Permanent Injunction. *Id.* After additional discovery, Evoqua's supplemental brief detailed additional violations of the Permanent Injunction. *See id.*; (ECF Nos. 36-1 –36-25, 40-1–40-44). Judge Bell granted Evoqua's motion finding both Watermark and Mr. Gethin in contempt. *Contempt Opinion* (ECF No. 47).

Until Judge Bell's retirement, the only issue left to be decided by the Court was the amount of the sanction. *See Smith Aff. RE Reasonable Attorneys' Fees & Costs* (ECF No. 60). Evoqua's request for attorneys' fees and Watermark's objections thereto were fully briefed. *See Evoqua's Resp. to Def. Objections to Smith Aff.* (ECF No. 71).

Watermark's contempt is now back before this Court. The merits of Evoqua's Motion have been fully and fairly litigated. In light of the Sixth Circuit's decision, Evoqua should be returned to the position it was in prior to the Vacating Order. Evoqua should recover its attorneys' fees and costs in connection with bringing this litigation and litigating the Motion for

1

Sanctions.  The only additional issue that the Court needs to address is the additional fees that Evoqua should recover because of the need to litigate its claim for contempt to the Sixth Circuit and responding to Watermark's petition for *certiorari* with the Supreme Court.  The contempt finding against Watermark should be reinstated, and Evoqua should be permitted to supplement its request for attorneys' fees and costs.

## I.     BACKGROUND

### A.     Watermark is Found in Contempt of the Permanent Injunction

On January 8, 2016, Evoqua filed a Complaint against M.W. Watermark, LLC, its President Michael Gethin, and current and former employees of Watermark, to enforce the Permanent Injunction entered against Watermark and Mr. Gethin in the 2003 litigation. *Complaint* (ECF No. 1).

Watermark, Mr. Gethin, and Watermark's employees willfully and deliberately violated the Permanent Injunction by using Evoqua's proprietary information and by infringing Evoqua's trademarks. Watermark's use of Evoqua's proprietary information included misappropriation of large spreadsheets (called "serial log files") which include a history of Evoqua's new equipment sales since 1980, *SERIAL.XLS* (Sealed ECF No. 40-9); *CUSTOMER.XLS* (Sealed ECF No. 40-10), and customer lists containing the contact information for Evoqua customers.  *Customer Contact List* (Sealed ECF No. 40-11).  Watermark also used Evoqua's trademarks in violation of the injunction, including use of Evoqua's J-MATE® mark on Watermark's web site.  Watermark even admitted that discovery "revealed documents on Defendants' computer system that should not have been there." *Watermark's Supp. Memo. in Opposition to the Motion for Sanctions* (ECF No. 36) at 4-5.

On September 12, 2016, this Court held Watermark and Mr. Gethin in contempt for violating both provisions of the permanent injunction. *Contempt Opinion* at 12-18.  The Court

found that Watermark and Mr. Gethin repeatedly obtained and used Evoqua's proprietary information:

> The clearest example of a violation of Paragraph 2 of the injunction is Watermark's use and dissemination of Plaintiff's serial log files. It is clear that the information in these files is proprietary information as defined by the permanent injunction. … Indeed, Defendants concede that Watermark should not have possessed this information.
>
> …
>
> Another example of a violation of Paragraph 2 is Driesenga's use of a customer contact list that he brought with him from Siemens. The injunction expressly prohibits the use of customer lists, and Defendants acknowledge that Watermark should not have possessed this information.

*Id.* at 12-13.  In addition, the Court found that Watermark and Mr. Gethin had used Evoqua's trademarks in violation of the Permanent Injunction:

> Some of [Watermark's web] pages used J-Mate in the title or in keyword tags without mentioning JMate products. The only plausible reason for including J-Mate in these pages was to attract customers looking for information or products associated with J-Mate to Defendant's website. …
>
> Using the term J-Mate in keyword tags or in the title of web pages advertising Watermark's sludge dryer is not a fair use, and is likely to confuse. At the very least, it leads to "initial-interest confusion," which occurs when a user interested in a particular brand of product searches for that product in a search engine and is led to a competitor's page promoting a different product.

*Id.* at 14-15.  Watermark and Mr. Gethin did not raise any argument in either round of briefing on the Motion for Sanctions challenging Evoqua's ownership of the Permanent Injunction, or the right to seek enforcement thereof.  *See Opp. to Motion for Sanctions* (ECF No. 29); *Supp. Memo in Opp. to Motion for Sanctions* (ECF No. 36).  The Court later acknowledged that Watermark had not raised this issue during the original pendency of Evoqua's Motion.  *Vacating Opinion* at 2.

3

This Court ordered Watermark and Mr. Gethin to pay sanctions, and requested briefing on the amount. *Order* (ECF No. 48). Briefing was completed on the amount of the sanction Evoqua was entitled to on November 11, 2016. *See Response to Obj. on Fees* (ECF No. 76). However, Judge Bell did not issue an award prior to his retirement.

**B.   The Court Vacates the Contempt Opinion**

On April 7, 2017, Watermark moved for an order dissolving or modifying the Permanent Injunction allegedly because it had been "satisfied," notwithstanding the fact that this Court found Watermark in contempt for violating it. *See Mot. for Relief fr. Permanent Injunction* (ECF No. 133-34). Watermark included a footnote in its memoranda alleging that "[w]hile Defendants dispute that Evoqua is the successor in interest to U.S. Filter/JWI, Inc., that topic will not be argued in this brief." *Memo. in Support of Relief* (ECF No. 134) at 1 n. 1. Based on Watermark's representation in this footnote, the Court held that Evoqua's status as successor-in-interest was disputed. *Order* (ECF No. 142). The Court ordered additional briefing on the alleged dispute.

On August 18, 2017, the Court vacated the contempt order, finding that Evoqua did not have standing to enforce the Permanent Injunction because "[t]he consent judgment in this case does not provide for enforcement by an assignee of U.S. Filter." *Vacating Opinion* (ECF No. 154) at 4. The Vacating Opinion relied on an opinion by the Federal Circuit applying Illinois law for the principle that enforcement by an assignee is barred where "nothing expressly set out in the consent judgment . . . extend[ed] [those enforcement] rights to any third party[.]" *Id.* (citing *Thatcher v. Kohl's Dep't Stores Inc.*, 397 F.3d 1370 (Fed. Cir. 2005)).

After a trial on trademark infringement and false advertising, Evoqua appealed the Vacating Opinion.

4

**C.      The Sixth Circuit Reverses, Finding Consent Decrees in Michigan Are Freely Assignable Absent Express Language to the Contrary**

On October 7, 2019, the Sixth Circuit held that under Michigan law, consent decrees are freely assignable.  *6th Cir. Opinion* at 8 ("Under Michigan contract law, 'rights can be assigned unless the assignment is clearly restricted.'") (quoting *Jawad A. Shah, M.D., PC v. State Farm Mut. Auto. Ins. Co.*, 920 N.W.2d 148, 158 (Mich. Ct. App. 2018)).  "The Consent Decree's mere silence on the question of assignability does not evince an intent to prohibit assignment."  *6th Cir. Opinion* at 9.

Watermark unsuccessfully challenged the Sixth Circuit's ruling.  Watermark filed a petition in the Sixth Circuit for an *en banc* hearing, which was denied.  *Denial of Hearing* En Banc*, Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, No. 18-2397/2398 (ECF No. 29-1 filed Nov. 21, 2019).  Watermark then petitioned for a writ of *certiorari* with the Supreme Court, which was also denied.  *M.W. Watermark, LLC. v. Evoqua Water Techs. LLC*, 2020 WL 2515510 (May 18, 2020).

## II.      LEGAL STANDARDS

The Federal Rules of Civil Procedure provide that the Court may provide relief to a party from a final judgment, order, or proceeding, where the order is "based on an earlier judgment that has been reversed or vacated; or [where] applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  A motion for relief under Rule 60(b)(5) must be made "within a reasonable time."  Fed R. Civ. P. 60(c)(1).

## III.      THE COURT SHOULD REINSTATE THE CONTEMPT FINDING

### A.      The Contempt Order Should Be Reinstated

This Court's Contempt Order should be reinstated to put Evoqua back in the same position it was in prior to the Vacating Order.  The parties fully and fairly litigated the issue of

contempt and the Court found clear and convincing evidence of Watermark and Mr. Gethin's contempt.  In light of the Sixth Circuit's Opinion, the reasoning and findings of the Court's Contempt Order are still valid and should be enforceable.

"Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Coal Resources, Inc. v. Gulf & Western Ind.*, 865 F.2d 761, 766 (6th Cir. 1989); *see also Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

Because the Sixth Circuit held that the Permanent Injunction is freely assignable, the basis for the Court's Vacating Order no longer applies:

> Michigan law allows for the assignment of a contract unless clearly restricted.  Further, that the Consent Judgment explicitly binds Watermark's successors and assigns but does not address U.S. Filter/JWI's successors and assigns makes sense in light of the fact that the Consent Judgment addresses only Watermark's future actions and obligations—that it may not infringe on certain trademarks or use U.S. Filter/JWI's proprietary information—and does not address U.S. Filter/JWI's.

*6th Cir. Opinion* at 9 (internal citations omitted).  Accordingly, the Contempt Order should be reinstated to put the case back in the same position it was in prior to the Vacating Order.  Before the Vacating Order, the parties had fully briefed and argued the issue of contempt, and the Court held Watermark and Gethin in contempt.  The only remaining issue for the Court to decide was the amount of the sanction.  Therefore, reinstating the Contempt Opinion is appropriate in accordance with the mandate of the Sixth Circuit. *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973).

Judge Bell previously determined by necessary inference that Evoqua had the right to enforce the Permanent Injunction against Watermark. *See Coal Resources, Inc. v. Gulf & Western Ind.*, 865 F.2d 761, 766 (6th Cir.1989).  The Court acknowledged that U.S. Filter was

6

"[o]ne of Evoqua's predecessors" and that, as its successor-in-interest, Evoqua now owns U.S.

Filter's trademark rights. *Contempt Opinion* (ECF No. 47) at 2. The Court then determined that

under paragraph 1 of the Permanent Injunction, Watermark was "***permanently enjoined from***

***using Evoqua's trademarks***." *Id.* at 3. Likewise, the Court determined paragraph 2 of the

injunction "***cover[ed] the use of Evoqua's proprietary information***." *Id.* The Court's

determinations that (a) Evoqua is U.S. Filter's successor-in-interest, and (b) the Permanent

Injunction covered Evoqua's trademarks and proprietary information were both necessary to the

Court's determination that Watermark was in contempt for violating the injunction, and thus both

constitute law of the case. *Coal Res.*, 865 F.2d at 766.

 The Court will ordinarily not consider arguments "that could have been raised in the

previous motion." *See Aero-Motive Co. v. Great Am. Ins.*, 302 F. Supp. 2d 738, 740 (W.D.

Mich. 2003) (concerning motions for reconsideration); *see also Energy Conversion Devices*

*Liquidation Tr. v. Trina Solar Ltd.*, No. 13-14241, 2015 WL 5216579, at *2 (E.D. Mich. Sept. 4,

2015) (concerning rule 59 motions, a court will ordinarily not permit a party to "introduce new

evidence that could have been adduced during the pendency of the previous motion.") (internal

quotations omitted).

 There is no dispute that Watermark failed to raise any challenge to Evoqua's ownership

of the Permanent Injunction, or the right to seek enforcement thereof, during the original

pendency of Evoqua's Motion for Sanctions. *See Opp. to Motion for Sanctions* (ECF No. 29);

*Supp. Memo in Opp. to Motion for Sanctions* (ECF No. 36); *Vacating Opinion* at 2. In fact,

Watermark and Mr. Gethin had repeatedly conceded that Evoqua was the successor-in-interest to

U.S. Filter, and that the Permanent Injunction "fell into Evoqua's hands in 2014." *Answer* (ECF

No. 15) at 13 ¶ 15; *Memo. in Support of Relief* (ECF No. 134) at 10; *see also Gethin Aff.* (ECF

No. 29-1) at 1 ¶ 4 ("Plaintiff Evoqua is a successor to JWI."), 3 ¶ 17 ("In the twelve (12) years since resolution of the 2003 suit, U.S. Filter/JWI (now Evoqua) and I have peacefully co-existed . . ."), 4-6 ¶¶ 24-39 (identifying employees hired from Evoqua's predecessors-in-interest between 2008 and 2015 as "former employees of Evoqua"). The law-of-the-case doctrine applies where an issue was a necessary inference in the Court's judgment. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("[T] he law of the case turns on whether a court previously 'decide[d] upon a rule of law'—which the Federal Circuit necessarily did—not on whether, or how well, it explained the decision."). And the Court necessarily determined that Evoqua had rights in the Permanent Injunction in finding Watermark in contempt of that injunction. *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938) ("Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter.").

That Watermark did not challenge Evoqua's right to enforce the Permanent Injunction during the original briefing of Evoqua's Motion for Sanctions—*i.e.*, the issue was not even disputed at that time—further supports the determination that the law of the case should control. *See JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008) (the law-of-the-case doctrine will bar challenges to a decision made at a previous stage of litigation that could have been previously raised, but were not). This Court previously acknowledged that Watermark never questioned whether Evoqua was the proper party to seek sanctions for Watermark's violations of the Permanent Injunction during the pendency of the Motion for Sanctions. *Vacating Order* at 2. Watermark's failure to timely raise the factual question of the assignment of the rights in the Permanent Injunction to Evoqua bar it from relitigating the merits of the contempt finding now. *JGR*, 550 F.3d at 532.

A district court may disregard its own earlier decision only under "extraordinary conditions" where some "cogent reason" makes that decision inapplicable. *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677–78 (6th Cir. 2002). This generally requires a showing of substantially different evidence raised at a subsequent trial, a subsequent contrary view of the law by a controlling authority, or a showing that the previous decision was clearly erroneous and would work a manifest injustice. *Id.* (*citing White v. Murtha*, 377 F.2d 428, 431-432 (5th Cir. 1968)). None of these factors apply in this case.

Here, the subsequent trial on the issue of trademark infringement supports the Court's Contempt Order. A jury found that Watermark infringed Evoqua's J-MATE® trademark, which is a mark that is expressly covered by the Permanent Injunction. *See generally Supp. Memo. in Support of Motion for Sanctions* (ECF No. 40) at 18-26. Nor was the Contempt Order clearly erroneous on the merits, given the jury's verdict. Further, the law on trademark infringement and the assignment of a consent decree has not changed. Given that Watermark has now been found to be a trademark infringer both by the Court in the Contempt Opinion, as well as by a jury after trial, the Contempt Opinion should be reinstated. *See U.S. Steel Corp.*, 479 F.2d at 494.

The Sixth Circuit's decision is not a barrier to returning Evoqua to the litigating position it held prior to the issuance of the Vacating Order. *See id.* Restoring Evoqua to the position it occupied prior to the retirement of Judge Bell is consistent with the principles underlying the law-of-the-case doctrine. The doctrine promotes finality in determining issues and efficiency in the use of judicial resources. *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 Fed. Appx. 976, 985 (6th Cir. 2006). The Contempt Opinion was issued after two hearings, a period of discovery, two rounds of briefing, and consideration of more than 50 exhibits filed by both parties. The

parties had a full and fair opportunity to litigate the issue of Watermark's contempt.  The Court's decision finding Watermark in contempt should be reinstated.

> **B.    Evidence of Record Establishes that Evoqua Has Obtained the Rights Covered by the Permanent Injunction and the Right to Enforce the Permanent Injunction**

Although Watermark never disputed that Evoqua had the right to enforce the permanent injunction during the Contempt proceedings, Watermark may attempt to argue the issue now. The Contempt Order should be reinstated before any additional issues are raised by Watermark.

The evidence demonstrates Evoqua's right to enforce the permanent injunction.  After the entry of the permanent injunction in 2003, U.S. Filter was merged into other entities and underwent multiple name changes.  On August 31, 2006, U.S. Filter was merged into Siemens Water Technology Corporation. *Trademark Assign. & Cert. of Merger* (2003 Litig. ECF No. 37-2) at PageID.545-550.  In 2011, Siemens Water Technology Corporation was merged into Siemens Water Technology Holding Corporation. *Trademark Assign. & Cert. of Merger* (2003 Litig. ECF No. 37-3) at PageID.551-557.  Siemens Water Technology Holding Corporation then immediately merged into Siemens Industries, Inc. *Trademark Assign. & Cert. of Merger* (2003 Litig. ECF No. 37-4) at PageID.558-568.  Both the Court and Watermark recognized that these mergers would not affect Evoqua's rights under the Permanent Injunction.  *Hearing Tr.* (ECF No. 147) at 6:10-16; 21:12-22:7.

On March 28, 2013, the business unit previously known as U.S. Filter was spun off from Siemens Industries, Inc. as Siemens Water Technologies LLC ("SWT"). *Wilderer Decl.* (2003 Litig. ECF No. 37-14) at PageID.626-28; *2d Wilderer Decl.* (2003 Litig. ECF No. 45-6) at PageID.732-34 ¶¶ 3-7.  The agreement spinning SWT off from Siemens Industries has been discussed in this case as the "Carve-Out Agreement." *Carve-Out Ag.* (ECF No. 45-2).

Thereafter, SWT changed its name to Evoqua.  *Trademark Assign. & Cert. of Name Change* (2003 Litig. ECF No. 37-7) at PageID.586-595.

The Court has previously stated that "each step of a statutory merger largely by operation of law keeps that original entity alive and embodied in the new corporation."  *Hearing Tr.* (ECF No. 147) at 6:10-16.  Evoqua acquired all necessary rights to enforce the Permanent Injunction pursuant to the mergers and under the Carve-Out Agreement.

Evoqua is the record owner of the documents and intellectual property rights that are covered by the 2003 Permanent Injunction.  There is no dispute that Evoqua owns the trademarks covered by the Permanent Injunction.  Indeed, Watermark was found to have infringed Evoqua's trademarks at trial.  *Judgment* (ECF No. 276).  Evoqua retains ownership of all of U.S. Filter's trademarks, including the J-MATE®, J-PRESS®, J-VAP® and U.S. FILTER® marks.  *Trademark Assign. & Cert. of Name Change* (2003 Litig. ECF No. 37-7) at PageID.586-595.  Evoqua also owns the goodwill embodied by those marks.  *Id.*  Indeed, registration of a trademark in the name of a transferee is *prima facie* evidence of the transfer of ownership of that mark.  *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 572 (6th Cir. 2001).

The Carve-Out Agreement confirmed that SWT received its predecessors' trademark rights.  The agreement gave SWT all rights in U.S. Filter's trademarks, including both registered marks and those at common law.  *Carve-Out Ag.* (2003 Litig. Sealed ECF No. 45-2) at 10-11 ¶ 2.1.1.  SWT also received all rights to claims for infringement that accrued prior to the transfer.  *Id.*  Evoqua, then SWT, also acquired all interest in the proprietary information, trade secrets, and other property at issue in the 2003 Litigation between U.S. Filter and Watermark.  SWT received all "records, files and other documents and data," and the "know-how," "including

business and trade secrets, technical and business information and data, inventions, experience

and expertise" at issue in the 2003 Litigation. *Carve-Out Ag.* (2003 Litig. Sealed ECF No. 45-2)

at 8, 10-11 ¶¶ 1.1.4., 2.2.

The documents and information transferred to SWT cover the proprietary information

identified in the Contempt Opinion.  The Contempt Opinion specifically identified Evoqua's

serial log files and customer contact list, both of which were derived from Evoqua's ERP system,

as being covered by the Permanent Injunction:

> USF/JWI information not generally available to the public that relates to the
> business or activities of, or belongs to, or is controlled or possessed by USF/JWI.
> The USF/JWI Proprietary Information includes, without limitation, information
> obtained by Defendants from USF/JWI's Enterprise Resource Planning ("ERP")
> System, serial histories, reports, analyses, financial information, plans, proposals,
> processes, sketches, photographs, graphs, software, databases (including, customer
> relationship management databases), drawings, specifications, equipment, samples,
> customer lists, supplier and vendor lists, contact lists, and information relating to
> costs, pricing, profits, markets, sales, products, market studies and forecasts, pricing
> policies and data, sales plans, customers and customer prospects, opportunities, and
> buying patterns, business plans, competitive analyses, agreements with customers,
> suppliers, vendors, and others, marketing and dealership agreements, and servicing
> and training programs and arrangements.

*Permanent Injunction* at 2-3.

Because Evoqua received all the rights in the documents and intellectual property

covered by the Permanent Injunction, it has obtained a right to enforce the Permanent Injunction

concerning those documents and intellectual property.  This is particularly clear with respect to

Evoqua's trademark rights.  Because trademarks are symbolic, they may only be transferred or

assigned together with the goodwill of the business.  1 *McCarthy on Trademarks and Unfair*

*Competition* § 2:16 (5th ed.).  And the goodwill associated with a mark encompasses the value a

company has built into a brand through their defense of the mark and protection of the brand

against infringement and unfair trade.  1 *McCarthy on Trademarks and Unfair Competition* §

2:17 (5th ed.).  Thus, where a company defends its trademark through litigation and obtains a

Permanent Injunction against infringement, that permanent injunction becomes part of the goodwill of the business. *See id.*

Any assignment of the trademark along with the goodwill associated with the mark is effectively an assignment of the trademark owner's rights to exclude. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999). The Permanent Injunction is a right to exclude Watermark from using Evoqua's trademarks. *Permanent Injunction* at 2. Any assignment of the trademarks covered by the Permanent Injunction evinces an intent to assign the injunction as well.

To remove all doubt as to Evoqua's rights under the Permanent Injunction, SWT also obtained all rights arising out of or in connection with litigation pertaining to U.S. Filter/JWI, Inc.

> Transferred Litigation. . . . Seller hereby transfers to Purchaser, and Purchaser hereby accepts the transfer of, all of Seller's rights and obligations in connection with, and arising from, any court or administrative proceedings, including litigation and arbitral proceedings. . . .

*Carve-Out Ag.* (2003 Litig. ECF No. 45-2) at ¶¶ 8.1-8.3. Only certain pending litigations that were active at the time of the merger that do not include the 2003 Litigation were excluded from the transfer. *Id.* SWT had the right to replace U.S. Filter as the party in any litigation involving U.S. Filter. *Id.* SWT also acquired U.S. Filter's rights and obligations under all contracts exclusively pertaining to U.S. Filter. *Id.* at ¶ 3.1. Because the Sixth Circuit has ruled that the Permanent Injunction can be assigned as a contract right, the agreement selling and transferring contracts to SWT would unambiguously cover a contract right assignment of the Permanent Injunction. *See 6th Cir. Opinion* at 8.

Watermark had the opportunity to brief the issue of the assignment of the Permanent Injunction to Evoqua, and Watermark raised no legally cognizable challenge to the validity of

the assignment.  Watermark's arguments focused exclusively on the Carve-Out Agreement, and Watermark acknowledged that Evoqua "acquired files and documents, know-how, contract rights, trademarks and litigation."  *Watermark's Response to Supp. Brief Regarding Successor-in-Interest Issue* (2003 Litig. ECF No. 50) at 3-4.

Watermark did not deny the existence of the assignment, but chose instead to attack its validity, which Watermark does not have standing to challenge.  *DAGS II, LLC v. Huntington Nat. Bank*, 616 F. App'x 830, 835 (6th Cir. 2015) ("a third party may not challenge the validity of an assignment."); *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) ("a litigant who is not a party to an assignment lacks standing to challenge that assignment.") (internal quotations omitted); *Pashak v. Interstate Highway Const., Inc.*, No. 189886, 1998 WL 2001203, at *1 (Mich. Ct. App. Mar. 20, 1998) ("Although IHC challenges the validity of the assignment as between [assignor] and [assignees], we find that it lacks standing to do so where the parties to the assignment . . . do not contest its validity."); *Bowles v. Oakman*, 246 Mich. 674, 678, 225 N.W. 613, 614 (1929) ("The assignor or indorser on negotiable instruments must protect his own interest, where he had been induced to assign or indorse through fraud; and the maker cannot defend or set up matters of defense which only exist between the indorser and indorsee.").

Watermark argued that the Cave-Out Agreement did not contain a specific reference to the Permanent Injunction.  *Watermark's Response to Supp. Brief Regarding Successor-in-Interest Issue* (2003 Litig. ECF No. 50) at 3-4.  But no law requires permanent injunctions to be identified with particularity in an assignment, as the terms of a contract need only be "reasonably certain."  *Restatement (Second) of Contracts* § 33 (1981).  An agreement to assign rights in files and documents, know-how, ***contract rights***, trademarks, and litigation covers the Permanent

14

Injunction in this case, which is both the product of litigation, and as the Sixth Circuit determined, a contract right.  *See id.*

There was no reasonable dispute that the Carve-Out Agreement assigned both the documents, intellectual property, and rights covered by the Permanent Injunction as well as the Permanent Injunction itself.  *See Carve-Out Agreement*, ¶¶ 1.1.4, 2.1.1, 2.2, 3.1, 8.1-8.3.  Evoqua has rights under the Permanent Injunction because it owns the trademarks covered by the injunction.  Evoqua also owns all of the documents, information, trade secrets, and "know-how" that were covered by the Permanent Injunction.  Evoqua also owns U.S. Filter's rights in the 2003 Litigation itself, and has the right to be substituted into any such litigation as the real party-in-interest.  Because the plain language of the Carve-Out Agreement shows that Evoqua has the right to enforce the Permanent Injunction, and because the Sixth Circuit removed any barriers to Evoqua's enforcement concerning the assignability of the Permanent Injunction, there is nothing left to litigate on this issue.  The Contempt Opinion, which was correctly decided on the merits, should be reinstated.

C.      **Evoqua's Motion Is Timely Because It Has Been Made Within A Reasonable Time**

Evoqua's Motion is timely because it was filed promptly after the Sixth Circuit's decision was finally upheld following the Supreme Court's denial of Watermark's petition for a writ of *certiorari*.

The reasonable time standard depends on the factual circumstances of each case.  *Smith v. Sec'y of Health & Human Servs.*, 776 F.2d 1330, 1333 (6th Cir. 1985).  Where there has been no prejudice to the opposing party, and circumstances exist compelling equitable relief, district courts generally find motions for relief filed several months or years removed from the order to be filed within a reasonable time.  *See e.g., In re Emergency Beacon Corp.*, 666 F.2d 754, 758

15

(2d Cir. 1981) (holding that a motion to vacate an order filed twenty-six months later was filed

within a reasonable time); *In re Pacific Far East Lines*, 889 F.2d 242 (9th Cir. 1989) (eighteen

months not untimely nor unreasonable given lack of prejudice and the fact that intervening law

had only just been passed); *Clarke v. Burkle*, 570 F.2d 824, 831–32 (8th Cir. 1978) (six-year

delay not unreasonable where no detrimental legal reliance); *Menier v. United States*, 405 F.2d

245 (5th Cir. 1968) (two years not unreasonable).

This Motion was filed approximately two months after the Supreme Court's denial of

Watermark's Petition for a Writ of *Certiorari* on May 18, 2020.  *See generally M.W. Watermark,*

*LLC. v. Evoqua Water Techs. LLC*, 2020 WL 2515510 (May 18, 2020).  Evoqua's Motion for

Relief is timely filed because Evoqua has acted diligently, and there is no prejudice to

Watermark by the timing of Evoqua's filing.  Under the Court's current Case Management

Order, the parties are not required to serve Initial Disclosures until August 10, 2020.  *First Case*

*Management Order* (ECF No. 298).  Dispositive motions are not due until March 19, 2021.  *Id.*

No trial date has been set, and may not take place any time soon given the ongoing COVID-19

pandemic.  *Id.*

Evoqua's Motion should also be considered timely given the compelling circumstances

for Evoqua to seek such relief.  Determination of this issue at this stage of the case is likely to

simplify the remaining questions to be litigated in this case.  This Court has already reached a

determination on the merits that Watermark breached both substantive provisions of the

Permanent Injunction.  *Contempt Opinion* (ECF No. 47).  And Watermark has separately been

found by a jury to have infringed trademarks that are covered by the Permanent Injunction.

*Judgment* (ECF No. 276).  Reinstating the Contempt Opinion now would conserve the resources

of the parties and the Court by ensuring that the parties do not expend undue resources litigating

this issue again through discovery, and may promote the possibility of settlement by providing both parties with certainty as to a key dispute that has driven this litigation through to the Supreme Court.

Thus, consistent with the requirements of Rule 60(c)(1) of the Federal Rules of Civil Procedure, Evoqua's Motion is timely filed because it was filed within a reasonable time given the particular circumstances of this case.

## IV. EVOQUA SHOULD BE GRANTED LEAVE TO SUPPLEMENT ITS REQUEST FOR ATTORNEYS' FEES IN VIEW OF SUBSEQUENT LITIGATION CONCERNING WATERMARK'S CONTEMPT

Because additional litigation was required both in this Court and on appeal to bring the parties back to the position they had been in prior to the retirement of Judge Bell, Evoqua should be granted leave to supplement its request for attorneys' fees to account for the additional legal costs incurred in holding Watermark accountable for its violations of the Permanent Injunction.

The Court determined that an award of attorneys' fees and costs was an appropriate sanction for Watermark's violations of the Permanent Injunction because Evoqua "should be compensated for the legal actions that it took to obtain compliance with the clear terms of the injunction." *Contempt Opinion* at 20. Where attorneys' fees are used as the measure of sanction, the award of fees should be sufficient to "make[] the prevailing party whole for the expenses caused by his opponent's obstinacy." *Scott v. Metro. Health Corp.*, No. 1:02-CV-485, 2008 WL 11291132, at *3 (W.D. Mich. July 16, 2008), aff'd, 531 F. App'x 647 (6th Cir. 2013).

Here, Evoqua filed its affidavit attesting to its reasonable attorneys' fees and costs following the Court's finding of contempt. *See Smith Aff.* (ECF No. 60). Rather than accept the Court's decision on the merits, Watermark collaterally attacked the Permanent Injunction on the basis that it had allegedly been "satisfied," or alternatively, that it had become unworkable, both despite the fact that Watermark had only just been found in contempt for violating it. *Motion for*

17

*Dissolution of the Permanent Injunction* (ECF No. 133-134).  Watermark caused the ensuing

briefing, appeals, and the petition for a writ of *certiorari* that resulted in the issue of

Watermark's contempt being returned to this Court once again.

The compensatory nature of an award of attorneys' fees as a sanction for contempt gives

the sanctioned party a measure of control over how much it will be asked to pay.  It can

minimize the sanction where it promptly recognizes its contemptuous behavior and seeks to cure.

Watermark initially acknowledged that it was caught red-handed with Evoqua documents it

should not have had.  *Watermark's Supp. Memo. in Opposition to the Motion for Sanctions* (ECF

No. 36) at 4-5.  Since then, it aggressively litigated the question of sanctions and required

significant additional attorneys' fees to be incurred.  *See Scott*, 2008 WL 11291132, at *3.

In order to be made whole, Evoqua should receive compensation sufficient to account for

the additional fees that Evoqua was forced to incur while seeking to enforce the Permanent

Injunction.  Thus, Evoqua should be granted leave to supplement its original request for

attorneys' fees and costs with the additional fees and costs it has incurred in the three years of

litigation since it prevailed on the merits of its Motion for Sanctions.

## V.     <u>CONCLUSION</u>

For at least the above reasons, Evoqua respectfully requests that the Court reinstate its

earlier Order, find that Watermark and Gethin are in violation of the Permanent Injunction, and

also permit Evoqua to supplement its request for attorneys' fees.

Dated: July 22, 2020              Respectfully submitted,

By:  */s/ Craig R. Smith*
         J. Michael Huget (P39150)
         Kevin M. Blair (P76927)
         **HONIGMAN LLP**
         315 E. Eisenhower Parkway, Suite 100
         Ann Arbor, MI 48108
         Tel:  (734) 418-4242
         Fax:  (734) 418-4243
         Email:  mhuget@honigman.com
                 kblair@honigman.com

         Craig R. Smith (*pro hac vice*)
         Eric P. Carnevale (*pro hac vice*)
         **LANDO & ANASTASI, LLP**
         60 State Street – 23rd Floor
         Boston, MA 02109
         Tel:  (617) 395-7000
         Fax:  (617)-395-7070
         Email:  csmith@lalaw.com
                 ecarnevale@lalaw.com

*Attorneys for Plaintiff*
*Evoqua Water Technologies LLC*

## CERTIFICATE OF SERVICE

I certify that on July 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants. Any other counsel of record will receive the foregoing via e-mail in PDF format.

         */s/ Craig R. Smith*
         Craig R. Smith

19

## CERTIFICATE OF CONFERENCE

In accordance with the requirements of W.D. Mich. LCivR 7.1(d), counsel for Plaintiff contacted counsel for Defendants via email in an attempt to obtain concurrence in the instant motion.  Defendants' counsel indicated that Defendants would oppose the motion.

/s/ Craig R. Smith
Craig R. Smith